IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | Criminal Action No. 7:15CR00045
Civil Action No. 7:17CV81295 |
| v. | ) ) | **MEMORANDUM OPINION** |
| HAMEEN SHAHID IRVIN, | ) ) | By: Hon. Glen E. Conrad |
| Defendant. | ) ) | Senior United States District Judge |

This matter is before the court on the objections filed by defendant Hameen Shahid Irvin, then represented by counsel, in response to the Report and Recommendation submitted by Magistrate Judge Pamela Meade Sargent, in which Judge Sargent recommends that the court deny Irvin's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. For the reasons stated, the court will overrule Irvin's objection, deny his § 2255 motion, and grant the government's motion to dismiss.

## **Background and Procedural History**

The facts of this case are relatively simple, and yet its procedural history is complicated. Because of the nature of Irvin's petition, the court will recount both sets of facts together.

### *Irvin is Charged*

In September 2014, a drug task force in the Roanoke Valley received information regarding a pending drug buy. Thereafter, detectives obtained a state court warrant to place a GPS tracking device on an informant's car. On October 4, 2014, one of Irvin's future co-defendants asked the informant to borrow a car in order to move heroin to the Roanoke area. On October 5, 2014, police monitored the location of the tracking device, and saw that the car was returning from Baltimore.

This information was transmitted to a Virginia State Police trooper, who executed a stop on the car after observing that the driver had an obstructed view. Irvin was a passenger inside.

Roughly five minutes after initiating the stop, troopers had a narcotics canine conduct a free air sniff around the vehicle, and the dog alerted to the presence of drugs. A subsequent search revealed cash, drug paraphernalia, and cell phones. Troopers arrested Irvin and others, and obtained search warrants for the cell phones. See ECF No. 167.

On May 28, 2015, a grand jury in the Western District of Virginia returned an indictment against Irvin and others that charged Irvin with conspiracy to possess with the intent to distribute heroin (Count One) and possession with intent to distribute heroin (Count Five). A superseding indictment was returned on November 12, 2015. ECF No. 78. It charged Irvin with conspiracy to possess with the intent to distribute 100 grams or more of heroin (Count One) and possession with intent to distribute heroin (Count Six). Thereafter, Irvin requested that his counsel file motions seeking various relief, including motions to suppress evidence from the traffic stop and from the GPS tracking device. Counsel, however, believed that there was no basis for suppression, and noted that at least one of Irvin's prior attorneys agreed. See ECF No. 330-1. Irvin proceeded to file those motions pro se. See ECF Nos. 136, 147, 148, & 152.

### *Irvin Ultimately Accepted a Guilty Plea and Was Sentenced*

The court held a hearing on Irvin's pending motions on October 5, 2016. See ECF No 193, Oct. 5, 2016 Hr'g Tr. After some consideration, Irvin stated that he wanted to withdraw his motions and proceed with a guilty plea.

> THE COURT: All right. So you want to prosecute today the motion to suppress the results of the car search and then the subsequent search of your telephone?
>
> DEFENDANT: You know, Judge Conrad, I ain't going to waste no more time. I'm going to take that plea. I withdraw the motion, Your Honor. You have a nice day. Everybody in the Court have a nice day. I withdraw the motion, Judge Conrad.
>
> THE COURT: So you're telling me that you're withdrawing the motion?

2

> DEFENDANT: Yeah, I'm going to take that plea.

Id. at 10. He also affirmed that he was satisfied with his counsel representing him. Id. at 11.

That same day, the court conducted a plea hearing. See ECF No 193, Oct. 5, 2016 Hr'g Tr. Irvin confirmed that he wished to plead guilty, id. at 13 & 38, and the court conducted a thorough Rule 11 colloquy, id. at 14–19, 26–48, 53–57. Among other things, Irvin affirmed that he agreed to waive his right to an appeal:

> THE COURT: Mr. Irvin, I looked over the plea agreement. It looks pretty good to me.
>
> I do notice that one thing is that in one of these paragraphs you've said that you would waive your right to appeal the Court's sentence in your case, or to waive the Court's judgment to take a plea of guilty from you, or really to waive your right to appeal any issue in this case, save for those very limited number of issues for which waiver of appeal is not permitted.
>
> Is that true? Did you decide to give up your right to appeal most issues in this case to a higher court?
>
> DEFENDANT: Yes, sir.

Id. at 27; see also id. at 43. Irvin also stated that he understood that the maximum sentence he could have received was 40 years. Id. at 21–22. He further acknowledged that he was avoiding a substantial risk in sentencing by pleading guilty:

> THE COURT: . . . Mr. Irvin if you change your mind, no one is going to hold that against you.
>
> DEFENDANT: I ain't trying to get no hundred years, Judge Conrad. No, I ain't going to change my mind.
>
> THE COURT: Well, you're not going to get a hundred years no matter what happens. You can't get any more than 40.
>
> DEFENDANT: I ain't going to get that. I understand that, Judge, loud and clear.

Id. at 39. He also re-affirmed that he was satisfied with his counsel. Id. at 55–56. The court accepted Irvin's plea.

3

Irvin signed the plea agreement on October 5, 2016 and pled guilty to Count One of the superseding indictment, and the United States agreed to dismiss Count Six. The parties agreed, under Federal Rule of Criminal Procedure 11(c)(1)(C), that Irvin would be sentenced to a period of incarceration within the range of 85 to 95 months. ECF No. 176. The plea agreement contained a waiver of Irvin's right to appeal. In part, Irvin agreed that:

> Knowing that I have a right of direct appeal of my sentence under 18 U.S.C. § 3742(a) and the grounds listed therein, I expressly waive the right to appeal my sentence on those grounds or on any ground. In addition, I hereby waive my right of appeal as to any and all other issues in this matter and agree I will not file a notice of appeal. I am knowingly and voluntarily waiving any right to appeal. By signing this agreement, I am explicitly and irrevocably directing my attorney not to file a notice of appeal.

Id.; see also ECF No. 445, Dec. 23, 2019 Hr'g Tr. at 40–41 (confirming contents of plea agreement and Irvin's initials and signatures throughout the agreement). Irvin agreed further that "I have consulted with my attorney and fully understand all my rights. I have read this plea agreement and carefully reviewed every part of it with my attorney." ECF No. 176.

Afterwards, Irvin filed a motion to withdraw his guilty plea. However, at his February 13, 2017 sentencing hearing, he agreed to retract that motion, decided to accept his guilty plea, and proceeded with sentencing:

> THE COURT: . . . Do you want to go forward today with a guilty plea?
>
> . . .
>
> DEFENDANT: I'm going to go on and take the guilty plea, sir.
>
> THE COURT: You want to plead guilty pursuant to this plea agreement?
>
> DEFENDANT: Yeah.
>
> THE COURT: Are you sure?

4

>   DEFENDANT: Yeah.
>
>   THE COURT: And you don't want to take me up on my offer to let you withdraw your plea?
>
>   DEFENDANT: I'm pleading guilty.

ECF No. 322, Feb. 13, 2017 Hr'g Tr. at 3–5; ECF Nos. 180, 202, 208, 209, & 218; see also ECF No. 445, Dec. 23, 2019 Hr'g Tr. at 21–27 (recounting history around guilty plea). Thereafter, the court adopted the plea agreement and imposed a sentence of 90 months of incarceration and four years of supervised release. This sentence was well below the applicable Guidelines range and within the range agreed to by the parties. See ECF No. 219 (determining applicable Guideline range of 151 to 188 months). In short order, Irvin again moved to withdraw his guilty plea. ECF No. 233. The court denied that motion. ECF Nos. 244 & 245.

### *Irvin Files a § 2255 Petition*

In December 2017, Irvin filed a 28 U.S.C. § 2255 motion. The court granted Irvin additional time and directed him to file an amended motion making a full statement of his claims. Thereafter, Irvin submitted an amended § 2255 motion alleging ineffective assistance of counsel during the guilty plea proceedings. ECF No. 310. In addition to the amended motion, Irvin also submitted a memorandum of facts and law in support of his § 2255 motion. ECF No. 313. Irvin added two § 2255 claims in the memorandum: ineffective assistance of counsel related to an alleged request by Irvin for an appeal and deprivation of meaningful access to the court on the basis that he was not provided with free copies of court documents. Id. The court denied Irvin's request to amend the amended § 2255 motion to add this latter claim. ECF No. 315.

On August 27, 2019, the court denied a motion to dismiss filed by the government and referred this matter to Judge Sargent to conduct an evidentiary hearing and submit a recommended disposition, pursuant to 28 U.S.C. § 636(b)(1)(B), on Irvin's claim that counsel rendered

ineffective assistance by refusing to file an appeal. However, the court reserved judgment on Irvin's remaining claim. See ECF No. 391 at 2 n.* (citing United States v. Killian, 22 F. App'x 300, 301 (4th Cir. 2001)); ECF No. 392.

On December 23, 2019, Judge Sargent conducted an evidentiary hearing. See ECF No. 445, Dec. 23, 2019 Hr'g Tr. Irvin first testified to his "wavering" on the decision to enter a guilty plea. Id. 2–4. He also recounted telling his defense counsel that his sentence was "too much time," to which counsel responded: "that's the best you can get Mr. Irvin." Id. 4–5.

Irvin's counsel also elicited testimony about Irvin's alleged requests for an appeal:

> COUNSEL: Did you tell him you wanted to appeal?
>
> DEFENDANT: Like I said, I wanted to note an appeal. He told me that wouldn't be a good idea.
>
> COUNSEL: Okay. After that, did you make any attempts to have Mr. Kenney come to see you at the jail to speak to you?
>
> DEFENDANT: I called his office several times and the secretary said he ain't in right now. He never came to the jail. I called back and back, he never came. . . .
>
> COUNSEL: And in those letters, did you complain about the sentence or did you specifically ask him to note an appeal?
>
> DEFENDANT: Number one, I complained about the sentence and I told him about the appeal. He still didn't reach out to me.

Id. at 5–7; see also id. at 38–39. On cross examination, Irvin also testified that he told his counsel to file an appeal during his sentencing hearing, called his counsel's secretary, and that "I know I sent him a letter" to that same effect. Id. 30–31. Later, however, Irvin could not confirm that he had asked for an appeal in writing:

> JUDGE SARGENT: In any of these letters, did you ever instruct him to appeal?
>
> DEFENDANT: I don't think I did. Not for sure. I wrote a lot of letters though. I had a cellmate that wrote a letter. He said, "I'm

6

> going to put it for appeal." I don't think it got to Mr. Kenney. A lot of mail don't go out of the building, sometime, ma'am, at the Western Regional Jail.
>
> JUDGE SARGENT: In any of your letters to Mr. Kenney, did you ever ask him had he filed your appeal?
>
> DEFENDANT: I ain't never asked him I don't think, ma'am. No, ma'am.

Id. at 40. By contrast, Irvin's counsel has submitted in an affidavit that: "At no time did Mr. Irvin request an appeal of his case in person, by letter, or telephonically." ECF No. 330-1.

At the evidentiary hearing, Irvin also confirmed that he had discussed the plea agreement with his counsel and that the plea agreement contained a waiver of a right to appeal. Id. at 41–43. However, Irvin testified that he had not gone through each part of his plea agreement with his counsel, and that he had lied to the court during the Rule 11 colloquy:

> JUDGE SARGENT: You went through the plea agreement with Mr. Kenney. He read it to you.
>
> DEFENDANT: Now he didn't read all the papers to me now. He didn't read every last one. He read some of them, he didn't read all the papers.
>
> JUDGE SARGENT: All right. At your plea hearing, Judge Conrad would have asked you, have you read this plea agreement in its entirety or had it read to you in its entirety?
>
> DEFENDANT: Ma'am, I ain't going to sit here and lie to you, but my lawyer didn't read all the papers to me.
>
> JUDGE SARGENT: Did you lie to Judge Conrad?
>
> DEFENDANT: I didn't have no choice. The lawyer ain't going to help me do nothing.

Id. at 43–45. At the same time, Irvin testified that he had recalled that the prosecution and this court had informed him that the plea agreement contained a waiver of appellate rights and that he had agreed to it. Id. at 47–48. For his part, Irvin's counsel stated in an affidavit that he read every line of the plea agreement to Irvin. ECF No. 330-1.

7

Irvin's testimony is the only evidence that he requested that his counsel note an appeal. The United States submitted copies of seven of Irvin's letters to counsel into evidence. ECF Nos. 413-1 to -4, -8, -10, & -11. The government also submitted letters from Irvin to this court and the Clerk's Office into evidence. ECF Nos. 413-5 to -7, -9, & -12. None of these letters mention that Irvin asked his attorney to pursue an appeal.

On January 31, 2020, Judge Sargent submitted a report and recommendation containing the following proposed findings of facts and conclusions of law:

1. The defendant has failed to persuade the court that he instructed his defense counsel to appeal his conviction;

2. The defendant has failed to persuade the court that his counsel had reason to think that a rational defendant in Irvin's position would want to appeal or that Irvin, himself, had demonstrated that he was interested in appealing his conviction and sentence; and

3. The defendant has failed to persuade the court that his defense counsel rendered him ineffective assistance.

ECF No. 423 at 9. Judge Sargent based her findings on a determination that Irvin was not credible because (1) he made "contradictory" descriptions of his alleged requests for an appeal, both in testimony and in his filings; (2) none of Irvin's letters submitted into evidence made mention of a request for an appeal; and (3) Irvin testified that he did not know that he had waived his appeal rights, despite his written plea agreement and Rule 11 colloquy. Id. at 7–8. On that basis, Judge Sargent recommended that the court deny Irvin's § 2255 motion. Irvin then filed an objection to Judge Sargent's report and recommendation.[1]

---

[1] Thereafter, the counsel appointed to represent Irvin in his § 2255 petition filed a motion to withdraw as counsel. Judge Sargent granted that motion "based on the court's finding that [counsel's] continued representation of the defendant would put [counsel's] personal safety at risk based on the actions of the defendant toward [counsel]." ECF No. 436

8

**Standard of Review**

Section 2255 sets forth four grounds on which a prisoner in federal custody may collaterally attack his sentence: (1) "the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "the court was without jurisdiction to impose such sentence"; (3) "the sentence was in excess of the maximum authorized by law," or (4) the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The petitioner bears the burden of proof by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

"[A] judge may [] designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court . . . of applications for posttrial relief made by individuals convicted of criminal offenses . . . ." 28 U.S.C. § 636(b)(1)(B) (footnote omitted). Where a party objects to a report and recommendation submitted by a magistrate judge, a district court must subject those matters to de novo review. United States v. Bryson, 981 F.2d 720, 723 (4th Cir. 1992).

**Discussion**

Claims of ineffective assistance are reviewed under the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). "Under Strickland, a movant seeking collateral relief from his conviction or sentence through an ineffective assistance claim must show (1) that his counsel's performance was deficient and (2) that the deficiency prejudiced his defense." United States v. Basham, 789 F.3d 358, 371 (4th Cir. 2015) (citing Strickland, 466 U.S. at 687).

To demonstrate deficient performance under Strickland, the movant must "show that counsel's representation fell below an objective standard of reasonableness" measured by "prevailing professional norms." 466 U.S. at 688. In assessing whether counsel's actions were

9

unconstitutionally deficient, the court "must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." Id. at 689. "The Strickland standard is difficult to satisfy, in that the 'Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight.'" Basham, 789 F.3d at 371 (quoting Yarborough v. Gentry, 540 U.S. 1, 8 (2003)); see also Strickland, 466 U.S. at 689 (emphasizing that a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time").

The prejudice prong of the Strickland test examines whether the alleged error by counsel affected the judgment. See 466 U.S. at 691. The movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

### I. Ineffective Assistance in Failing to Note an Appeal

The United States Court of Appeals for the Fourth Circuit has ruled that a failure to note an appeal upon a timely request constitutes ineffective assistance of counsel, regardless of the likelihood of success on the merits. See United States v. Peak, 992 F.2d 39, 42 (4th Cir. 1993). This holds true even where a defendant has waived his right to appeal as part of his plea agreement. See United States v. Poindexter, 492 F.3d 263, 273 (4th Cir. 2007). If a defendant fails to clearly instruct counsel to note an appeal, counsel must nevertheless consult with the defendant about an appeal "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Roe v. Flores-Ortega,

528 U.S. 470, 480 (2000). In determining whether counsel had reason to consult with a defendant about an appeal, it is "highly relevant" whether the conviction followed a trial or guilty plea. Id. Courts should also consider whether a defendant, who pleaded guilty pursuant to a plea agreement, waived some or all of his appeal rights. Id. Thus, failure to consult with a defendant about an appeal is not unreasonable in every case. See id. at 479. After conducting a de novo review, the court believes that Irvin has not carried his burden to show that he received ineffective counsel with respect to his alleged request for an appeal.

First, the court finds that Irvin has not shown by a preponderance of the evidence that he requested that his counsel note an appeal. Like Judge Sargent, the court is not convinced by Irvin's inconsistent stories about how he supposedly made this request. Irvin did not make this allegation in his first two filings related to the instant § 2255 petition. See ECF Nos 286 & 310. When he began mentioning it, Irvin was inconsistent about when the request supposedly occurred. See ECF Nos. 313 at 2, 9. The court also finds the affidavit from Irvin's counsel to be a more credible source of information than Irvin's self-interested and shifting testimony. See ECF No 193, Oct. 5, 2016 Hr'g Tr. at 5 (describing knowledge of and experience with Irvin's defense counsel). Finally, Irvin is a prolific letter writer. Although several letters allege that Irvin asked his counsel to file pre-trial motions, none of them mention asking counsel to file an appeal.

Second, assuming that counsel did not consult with Irvin regarding an appeal, the court believes that Irvin has not shown that his counsel was deficient because there is no "reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Flores-Ortega, 528 U.S. at 480. Here, the plea agreement provided that Irvin would receive a sentence of incarceration that was 56 months less

11

than the applicable Sentencing Guideline range and contained an explicit waiver of appellate rights. See ECF No. 176 at §§ B.1, C.1 (stipulating to period of incarceration of 85 to 95 months); ECF No. 219 (determining applicable Guideline range of 151 to 188 months).

Moreover, as discussed below, the court believes that Irvin has pointed towards no nonfrivolous grounds for an appeal, Irvin understood that he received a lenient sentence after pleading guilty, and Irvin indicated that he wanted the case to be over. Accordingly, the court does not find that there was reason to think that a rational defendant in Irvin's position would want to appeal. See United States v. Courtade, 929 F.3d 186, 194 (4th Cir. 2019), as amended (July 10, 2019), cert. denied, 140 S. Ct. 907 (2020) (affirming dismissal of § 2255 petition where the defendant "pleaded guilty and executed a broad appellate waiver, [] he otherwise indicated a desire for the proceedings to end," and received a favorable sentence); United States v. Cooper, 617 F.3d 307, 314 (4th Cir. 2010) ("In the end, [counsel] could reasonably believe that he had shaped a proceeding that not only was fair to Cooper but also accomplished everything Cooper wanted. Indeed, he could have objectively concluded that Cooper received the best possible outcome in the circumstances."). Nor does the court believe that Irvin has shown by a preponderance of the evidence that he "reasonably demonstrated to counsel that he was interested in appealing," Flores-Ortega, 528 U.S. at 480, for the same reasons that the court believes that Irvin has not shown that he expressly asked his counsel to note an appeal. There is no evidence that he did so, aside from Irvin's inconsistent testimony. Accordingly, this claim of ineffective assistance fails at the first prong of the Strickland analysis.

Further, even if Irvin had satisfied the first prong, his claim would still fail because he has not satisfied the second prong of the Strickland test. Specifically, the court believes that Irvin has offered no evidence supporting a reasonable probability that "but for counsel's deficient failure to

12

consult with him about an appeal, he would have timely appealed." Flores–Ortega, 528 U.S. at 484.

## II.  Ineffective Assistance in Plea Agreement and Sentencing

The court turns to Irvin's remaining claims for ineffective assistance regarding counsel's actions during the plea process and counsel's decision to not pursue motions to suppress. The court will deny Irvin's motion as to these claims.

As to his decision to plead guilty, Irvin claims that he did not understand the contents of his plea agreement. After pleading guilty, a § 2255 petitioner may only succeed by showing "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). "In the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." United States v. Lemaster, 403 F.3d 216, 221–22 (4th Cir. 2005)

Here, the government read portions of the plea agreement out loud to Irvin during his plea hearing and the court discussed its contents at length with Irvin. Irvin confirmed under oath that he understood the terms, including the recommended sentence and the fact that he would waive his Fourth Amendment concerns by pleading guilty. Irvin also affirmed multiple times—at his plea hearing and at sentencing—that he was satisfied with his counsel's services. Nothing in the record has convinced the court to disregard these sworn statements. See United States v. Stephens, 427 F. Supp. 3d 680, 690 (D.S.C. 2019) (defendant did not explain "why any of his admissions during the Rule 11 colloquy, along with statements of satisfaction with his counsel's performance and understanding of his sentencing exposure, should be ignored or treated as untrue"). Thus, this

claim fails the first Strickland prong.

As to the motions to suppress, Irvin alleges that his counsel was constitutionally ineffective in deciding not to raise a Fourth Amendment challenge to the evidence obtained from the stop that led to his arrest and the evidence obtained by a GPS tracking device. The court concludes that counsel's decision not to move for the suppression of this evidence did not constitute deficient performance. First, a search warrant was obtained before the GPS tracking device placed on the car, and Irvin does not allege that the warrant was defective. See ECF No. 167-1. Second, Irvin concedes that his traffic stop occurred after a "slight traffic violation," but argues that it was unduly prolonged. ECF No. 313 at 4. Irvin does not allege how long his stop was prolonged for, and the only information in the record regarding the length of the stop indicates that the car was pulled over at 5:15 p.m., and that the drug-sniffing dog alerted at 5:20 p.m. See 167 at 3–5. Irvin does not explain how it was objectively unreasonable for his counsel to not pursue suppression of this evidence. See Illinois v. Caballes, 543 U.S. 405, 409 (2005) (concluding upon review of a motion to suppress, which involved a ten-minute stop, that "the dog sniff was performed on the exterior of respondent's car while he was lawfully seized for a traffic violation" and that "[a]ny intrusion on respondent's privacy expectations does not rise to the level of a constitutionally cognizable infringement"). Third, law enforcement obtained search warrants for the cellphones seized in the traffic stop. See ECF No. 167-2 to -5. It is not clear what nonfrivolous grounds for suppression Irvin's counsel could have raised. Thus, the court believes that Irvin has not shown that his counsel was deficient, and it this claim regarding the motions to suppress fails the first Strickland prong.

## **Conclusion**

For the reasons stated, the court the court will overrule Irvin's objections to Judge Sargent's Report and Recommendations, deny Irvin's § 2255 motion, and grant the government's motion to dismiss.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 31st day of July, 2020.

*[signature]*

Senior United States District Judge